625 P.2d 316

STATE of Arizona ex rel. Charles F. HYDER, Maricopa County Attorney, Petitioner,

v.

The SUPERIOR COURT OF MARICOPA COUNTY, Arizona; Honorable William P. French, Judge of the Superior Court; Craig Mehrens, Attorney At Law, for Realtor; and Realtor in 32 G.J. 191, real party in interest, Respondents.

No. 15022.

Supreme Court of Arizona, In Banc.

Jan. 27, 1981.

Rehearing Denied March 3, 1981.

Charles F. Hyder, Maricopa County Atty. by Myrna J. Parker, Deputy County Atty., Phoenix, for petitioner.

Thomas A. Thinnes, Phoenix, for respondents.

STRUCKMEYER, Chief Justice.

This special action was brought to vacate the order of the Honorable William P. French, Judge of the Superior Court of Maricopa County, Arizona, quashing a subpoena duces tecum. The subpoena was directed to Craig Mehrens, an attorney licensed to practice in Arizona. It ordered him to appear and testify before a grand jury, and to produce "all personal letters written to SANDRA MARIE WAYMAN by RONALD A. WAYMAN between August 1979, and March 1980 * * *." Ronald Wayman is a client of Mehrens. He has been charged with two counts of sexual conduct with a minor, his daughter, Sandra Marie. Judge French, on Mehrens' motion, quashed the subpoena, being of the view that the letters were protected by the attorney-client privilege. Since we agree that the letters are protected by the attorney-client privilege, the relief requested is denied.

It is the State's position that Wayman engaged in certain sexual conduct with a minor, his daughter, in 1979. Subsequent thereto, she left Arizona to live in California. While she was in California, Wayman wrote and mailed certain letters to her in which, assertedly, the sexual conduct was discussed. In March, 1980, Sandra returned to her parents' home in Arizona, bringing the letters with her. On July 3, 1980, she left home again, but did not take the letters with her. One week later, the criminal complaint in this case was filed. A search warrant was issued to obtain certain incriminating items from the Waymans' residence, including the letters. The letters, however, were not found in the search because prior to the search Wayman delivered the letters to Mehrens. They were being kept by Mehrens when a subpoena duces tecum issued in Maricopa County Grand Jury Proceeding 32 GJ 191 on August 5, 1980, directed him to appear and bring the letters. Mehrens moved to quash the subpoena and delivered the letters under seal to Judge French, who ruled quashing the subpoena, as stated.

The State asserts that Wayman stole the letters from his daughter and that they were delivered to Mehrens so their discovery would be impeded. There are, however, no evidentiary facts before this Court which support these assertions. Mehrens, on the other hand, filed certain affidavits. The affidavit of Wayman's wife implies that the letters were not stolen but were abandoned by Sandra when she left the Waymans' residence. Mehrens' affidavit says the letters were given to him in order that he might advise Wayman as to his legal rights. Since the affidavits support Mehrens' position, we assume for the purpose of this decision that the letters were not stolen and were delivered to Mehrens in furtherance of his legal representation.

In a special action, an appellate court will ordinarily not weigh the evidence on which the decision in the court below was made. We will only consider whether the decision either totally lacks any evidence to support it or is contrary to uncontradicted and unconflicting evidence. *Bishop v. Law En-*

*forcement Merit Sys. Council,* 119 Ariz. 417, 421, 581 P.2d 262 (App.1978); *Arizona Dept. of Public Safety v. Dowd,* 117 Ariz. 423, 426, 573 P.2d 497 (App.1977).

■ The record here establishes that the subpoena was quashed because of the attorney-client privilege.[1] The attorney-client privilege prevents a lawyer from being compelled to produce a document of a client which pre-exists the attorney-client relationship if the document was transferred to the attorney to further his legal advice *and if the. client himself would be privileged from producing the document. Fisher v. United States,* 425 U.S. 391, 403–405, 96 S.Ct. 1569, 1577–1578, 48 L.Ed.2d 39 (1976). *Cf. Buell v. Superior Court of Maricopa County,* 96 Ariz. 62, 68–69, 391 P.2d 919 (1964) (recognizing that privilege covers documents delivered to attorney to secure legal advice, but not if delivered in furtherance of fraud or crime).

We therefore turn to the question of whether the respondent judge was correct in holding that under the circumstances of this case the privilege against self-incrimination would invalidate a subpoena directed at Mehrens' client. This question was left open in *Fisher v. United States,* supra, 425 U.S. at 414, 96 S.Ct. at 1582, the Court saying:

"Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his 'private papers,' * * *."

■ The Fifth Amendment to the federal constitution, which applies to the states through the Fourteenth Amendment's due process clause, *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964), provides in its relevant part:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *." United States Const., Amend V.

The reference to "a witness" in the federal constitution prohibits not only compulsory incriminating oral testimony but any compulsory incriminating communicative act. *Schmerber v. State of California,* 384 U.S. 757, 763–764, 86 S.Ct. 1826, 1831–1832, 16 L.Ed.2d 908 (1966).

The Court in *Fisher* acknowledged numerous decisions have held that the Fifth Amendment prohibits the production of a person's private papers against his wishes. 425 U.S. at 408–409, 96 S.Ct. at 1580. These cases were based on the idea, apparently first articulated in *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), that the self-incrimination clause is intimately related to the search and seizure prohibition of the Fourth Amendment and creates, like the Fourth Amendment, a private enclave where an individual may lead a private life without governmental intrusion. See *id.,* 116 U.S. at 633, 6 S.Ct. at 534; *Fisher v. United States,* 425 U.S. at 416, 96 S.Ct. at 1583 (Brennan concurring). The *Fisher* Court, however, rejected the idea that the Fifth Amendment is based on privacy principles, holding instead that the purpose of the self-incrimination clause was not to achieve a general protection of privacy but to prevent the specific evil of compelled self-incrimination.[2] 425 U.S. at 399–400, 96 S.Ct. at 1575–1576.

1. In moving to quash the subpoena, Mehrens also invoked his client's right against compelled self-incrimination guaranteed by the Fourteenth Amendment. Since that right is a personal one, Mehrens may not claim it on behalf of his client. *Fisher v. United States,* 425 U.S. 391, 397, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39 (1976); *see State v. Myers,* 117 Ariz. 79, 87–88, 570 P.2d 1252 (1977). This is not a case where constructive possession of the subpoenaed documents by the client is so clear or relinquishment of possession by the client is so temporary and insignificant as to leave the per- sonal compulsion on the client substantially intact, and, thus, permit Mehrens to claim privilege on behalf of his client. See *Fisher v. United States,* supra; *Couch v. United States,* 409 U.S. 322, 333, 93 S.Ct. 611, 618, 34 L.Ed.2d 548 (1973).

2. In discussing the Fourth and Fifth Amendments, Wigmore states that "the two doctrines * * * had totally different political and legal histories", thus any intimate relation doctrine is fallacious. 8 Wigmore, Evidence § 2264(2), n. 4 (McNaughton rev. 1961).

■ Compelled self-incrimination occurs when an individual is forced to make an incriminating communicative act. *Fisher v. United States*, 425 U.S. at 408, 96 S.Ct. at 1579; *In re Grand Jury Proceedings United States*, 626 F.2d 1051, 1055 (1st Cir. 1980); *United States v. Beattie*, 541 F.2d 329 (2nd Cir. 1976); *Matter of Grand Jury Empanelled*, 597 F.2d 851, 859–860 (3rd Cir. 1979); *United States v. Authement*, 607 F.2d 1129, 1131 (6th Cir. 1979); *United States v. Osborn*, 561 F.2d 1334, 1338 (9th Cir. 1977); Note, 18 Bost.Co.Ind. & Comm.L.Rev. 998, 1008–1016 (1977). While most federal appellate courts accept the foregoing statement as the test, some have taken the Court's reservation of the question in *Fisher* to mean that the per se prohibition against the compelled production of private papers of *Boyd* is still viable. *See In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033 (3rd Cir. 1980); *In re Grand Jury Proceedings (McCoy)*, 601 F.2d 162, 167 (5th Cir. 1979). We do not, however, think the Supreme Court could have been more specific in rejecting privacy as the predicate for the Fifth Amendment.

The documents sought from the taxpayers' attorneys in *Fisher* were the workpapers created by accountants in preparing the taxpayers' returns. Letters were also sought, but the Court stressed that these letters were written by the accountants and sent to the taxpayers. 425 U.S. at 413, n. 13, 96 S.Ct. at 1582, n. 13. By responding to the subpoena, the taxpayers would admit the existence of the papers and their possession of them. The Court noted, however, that such admissions would not be incriminating for "it is not illegal to seek accounting help in connection with one's tax returns or for the accountant to prepare workpapers and deliver them to the taxpayer." *Id.*, 425 U.S. at 412, 96 S.Ct. at 1581. The Court said:

"As for the possibility that responding to the subpoena would authenticate the workpapers, production would express nothing more than the taxpayer's belief that the papers are those described in the subpoena. The taxpayer would be no more competent to authenticate the accountant's workpapers or reports by producing them than he would be to authenticate them if testifying orally. The taxpayer did not prepare the papers and could not vouch for their accuracy. The documents would not be admissible in evidence against the taxpayer without authenticating testimony. Without more, responding to the subpoena in the circumstances before us would not appear to represent a substantial threat of self-incrimination." 425 U.S. at 412–413, 96 S.Ct. at 1582 (footnotes omitted).

■ The subpoena in the instant case is directed to "Any and all personal letters written * * * by RONALD A. WAYMAN * * *." Unlike *Fisher*, compliance with this subpoena would authenticate these letters since in producing them Wayman admits, by the wording of the subpoena, that he is their author. If the letters contain incriminating information, they would be relevant and could be admitted under Rule 801(d)(2), Arizona Rules of Evidence, 17A A.R.S., as admissions by party-opponent. They would be admissible, however, only if there were proof that the letters were written by Wayman. See 7 Wigmore, Evidence §§ 2129, 2130 (Chadbourn rev. 1978). Since the State would have testimony that these letters were turned over by Wayman under a subpoena requesting letters he authored, *see In re Grand Jury Proceedings United States*, supra at 1055; *United States v. Plesons*, 560 F.2d 890, 893 (8th Cir. 1977), the production would be a communicative act that provides the key to the admission of the letters into evidence against him. The production would be an incriminating communicative act within the protective ambit of the Fifth and Fourteenth Amendments to the federal constitution.[3] This

---

**3.** "No meaningful distinction can be drawn between a communication necessarily implied by legally compelled conduct and one authenticating the articles expressly made under compulsion in court. Testimonial acts of this sort— authenticating or vouching for preexisting chattels [or documents]—are not typical of the sort of disclosures which are caught in the

result has been reached in similar situations by the federal courts. See, e. g., *In re Grand Jury Proceedings United States*, supra; *United States v. Beattie*, supra; see also, *United States v. Plesons*, supra.

 It is not relevant that the letters have been read by others, that they were sent to another with apparently no desire to have them returned or even that the letters could be authenticated by some other means than through mention of Wayman's compliance with the subpoena.[4] *In re Grand Jury Proceedings United States*, supra, at 1056–1057; *United States v. Beattie*, supra at 331. This becomes obvious when it is understood that the evil to be prevented is not the invasion of Wayman's privacy or the production of the letters, but the fact that Wayman wrote the letters, which results from the compelled production. The "Fifth Amendment protects against compelled self-incrimination, not the disclosure of private information." *Fisher v. United States*, supra, 425 U.S. at 401, 96 S.Ct. at 1576 (brackets and quotes omitted); see *Andresen v. Maryland*, 427 U.S. 463, 473, 96 S.Ct. 2737, 2745, 49 L.Ed.2d 627 (1976).

We do not hold that these letters cannot be obtained or used against Wayman. We simply conclude under the facts before this Court the production of these letters under a subpoena directed to Wayman violates the privilege against self-incrimination. Since Wayman was not required to obey the subpoena, his attorney was also privileged under the attorney-client privilege from complying with it. The attorney is but the agent of the client. See 8 Wigmore, Evidence § 2307 (McNaughton rev. 1961).

Relief denied.

main current of history and sentiments giving vitality to the privilege. Yet they are within the borders of its protection." 8 Wigmore, Evidence § 2264(1), p. 380 (McNaughton rev. 1961). Judge Friendly is in accord with this statement. See *United States v. Beattie*, 522 F.2d 267, 270 (2nd Cir. 1975), *remanded* 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1967), *affirmed as modified*, 541 F.2d 329 (1976),

HOLOHAN, V. C. J., HAYS, J., and OGG and FROEB, Judges, Court of Appeals, concur.

Note: In the absence of Justice JAMES DUKE CAMERON and FRANK X. GORDON, Jr., Judges JACK L. OGG and DONALD F. FROEB, Court of Appeals, Division I, were called to sit in their stead.

where he wrote that a "subpoena demanding that an accused produce his own records is * * the equivalent of requiring him to take the stand and admit their genuineness * * *." *See also, Schmerber v. State of California*, supra, 384 U.S. at 763–764, 86 S.Ct. at 1832.

4. See Rule 901(b), Arizona Rules of Evidence, 17A A.R.S.