708 P.2d 72

**Michael Thomas HITCH, Petitioner,**

v.

**PIMA COUNTY SUPERIOR COURT, The Honorable Gilbert Veliz, Division II, Respondents,**

**and**

**STATE of Arizona, Real Party in Interest.**

**No. 18080–SA.**

Supreme Court of Arizona, In Banc.

Oct. 1, 1985.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman and David Sherman, Deputy Public Defenders, Tucson, for petitioner.

Stephen D. Neely, Pima County Atty. by Rick Unklesbay, Deputy County Atty., Tucson, for respondents.

Nat. Legal Aid and Defender Ass'n by Richard J. Wilson, Washington, D.C., for amicus curiae.

CAMERON, Justice.

This is a special action brought by defendant from an order of the trial court compelling defendant's attorney to deliver potentially inculpatory, physical evidence to the state and requiring that the attorney withdraw from representation. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and Rule 7, R.P.Sp.Act., 17A A.R.S.

We must decide three questions:

1. Does a defense attorney have an obligation to turn over to the state potentially inculpatory, physical evidence obtained from a third party?
2. If so, in what manner may this be done?
3. Must he then withdraw as attorney for the defendant?

The essential facts are not in dispute. Defendant was indicted for first degree murder and is currently awaiting trial on that charge. In the course of their investigation, the police interviewed defendant's girlfriend, Diane Heaton, who told them that the victim was in possession of a certain wristwatch shortly before his death. Subsequently, an investigator for the Pima County Public Defender's Office contacted Ms. Heaton and she informed him that she had found a wristwatch in defendant's suit jacket. She also stated that she did not want to turn the evidence over to the police. The investigator contacted defendant's attorney who told him to take possession of the watch and bring it to the attor-

ney's office. The attorney indicated that he did this for two reasons. First, he wanted to examine the watch to determine whether it was the same one that Ms. Heaton had described to the police. Second, he was afraid that she might destroy or conceal the evidence. Shortly thereafter, defendant informed the police that he had taken a watch from the victim. The police were, however, unaware of the location of that watch.

On 11 June 1984, defendant's attorney filed a petition with the Ethics Committee of the Arizona State Bar, requesting an opinion concerning his duties with respect to the wristwatch. The Ethics Committee informed the attorney that he had a legal obligation to turn over the watch to the state and that he also might be compelled to testify as to the original location and source of the evidence. Opinion No. 85–4 (14 March 1985).[1]

Defendant's attorney informed the Respondent Judge of the Committee's decision. Judge Veliz ordered that the watch be turned over to the state and that the attorney withdraw from the case. He also stayed the order to allow the filing of this petition for special action. We accepted jurisdiction because this case presents an issue of statewide importance in an area of the law that is unsettled.

## I.

### Must Defendant's Attorney Turn the Evidence Over to the State?

We have previously held that an attorney need not turn over physical evidence obtained from his client if the evidence was such that it could not be obtained from the client against the client's will, *State v. Superior Court*, 128 Ariz. 253, 625 P.2d 316 (1981). We have not, however, ruled as to physical evidence obtained from a third party. As to this question, cases from

1. The Ethics Committee, in issuing its opinion, relied on the previous Code of Professional Responsibility, Rule 29, Sup.Ct. Rules, 17A A.R.S. New rules went into effect on 1 February 1985, and we will decide this issue pursuant to these new rules. Rules of Professional Conduct, effective 1 February 1985, Rule 42, Arizona Sup.Ct. Rules, 17A A.R.S. The outcome would be the same regardless which rules we would apply.

other jurisdictions are few in number. We do note, however, two cases that have dealt with the issue before us and have found that a defense attorney, as an officer of the court, has an obligation to turn over to the state material evidence obtained from third parties.

The Alaska Supreme Court was confronted with a case in which the defendant's attorney in a kidnapping case had received from a third party written plans for the kidnapping drawn by the client. In reviewing whether counsel violated defendant's right to adequate representation by making the existence of the plans known to the state, the court stated:

> As Morrell notes, authority in this area is suprisingly sparse. The existing authority seems to indicate, however, that a criminal defense attorney has an obligation to turn over to the prosecution physical evidence which comes into his possession, especially where the evidence comes into the attorney's possession through acts of a third party who is neither a client of the attorney nor an agent of a client. After turning over such evidence, an attorney may have either a right or a duty to remain silent as to the circumstances under which he obtained such evidence, but Morrell presents no authority which establishes that a criminal defendant whose attorney chooses to testify regarding to these matters is denied effective assistance of counsel. *Morrell v. State*, 575 P.2d 1200, 1207 (Alaska 1978).

The California Court of Appeals, in a case in which the defendant's wife had given his attorney a pair of shoes, linked to the murder, which the state seized from defendant's attorney, stated:

> In any event, in the final analysis the controlling question is whether the State's seizure of the evidence violated defendant's rights. It did not. Neither the public defender nor substituted counsel for defendant had the right to withhold the evidence from the State by asserting an attorney-client privilege.

*People v. Lee*, 3 Cal.App.3d 514, 526, 83 Cal.Rptr. 715, 722 (1970).

Both cases relied on dictum from *State v. Olwell*, 64 Wash.2d 828, 394 P.2d 681 (1964), in finding that counsel had acted properly. In Olwell, defense counsel was served with a subpoena duces tecum in which he was asked to produce, at a coroner's inquest, all knives in his possession and control relating to the defendant. The attorney refused to indicate whether or not he was in possession of these knives, arguing that to do so would violate the confidential relationship of attorney and client. The Washington Supreme Court found that the subpoena was defective on its face because it required the attorney to reveal information given to him in the course of discussions with his client. The court stated, however:

> The attorney should not be a depository for criminal evidence * * * which in itself has little, if any, material value for the purposes of aiding counsel in the preparation of the defense of his client's case. Such evidence given the attorney during legal consultation for information purposes and used by the attorney in preparing the defense of his client's case, whether or not the case ever goes to trial, could clearly be withheld for a reasonable period of time. It follows that the attorney, after a reasonable period, should, as an officer of the court, on his own motion turn the same over to the prosecution.

*Id.* 394 P.2d at 684–85.

Of course, if the physical evidence is contraband, the attorney may be required to turn over the property even if he obtained that evidence from his client. For example, in a case where the attorney obtained from his client the money taken in a bank robbery and a sawed-off shotgun used in the crime, the attorney was required to turn the property over to the state. *In Re Ryder*, 381 F.2d 713 (4th Cir.1967). See Comment, *The Right of a Criminal Defense Attorney to Withhold Physical Evidence Received from his Client*, 38 U.Chi.L.Rev. 211 (1970); Note,

*An Attorney in Possession of Evidence Incriminating his Client,* 25 Wash. and Lee L.Rev. 133 (1968).

■ At issue is the conflict between a defense attorney's obligation to his client and to the court. As the Preamble to the Rules of Professional Conduct notes, a lawyer is both "a representative of [his] clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." As a representative of his client, a lawyer must act as a zealous advocate, demonstrating loyalty to his client and giving him the best legal advice possible within the bounds of the law. As part of this zealous representation, the lawyer is admonished not to reveal information relating to representation of his client. ER 1.6.

The Comment to ER 1.6 states:

The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except

as authorized or required by the Rules of Professional Conduct or other law.[2]

Because clients are aware that their lawyers will not repeat their communications, they feel that they may make both full and honest disclosure. Trial counsel is thus better able to evaluate the situation and prepare a proper defense. Thus, it has been said that "it is in the interest of public justice that the client be able to make full disclosure." *Clark v. State,* 159 Tex.Crim. App. 187, 199, 261 S.W.2d 339, 346, *cert. denied,* 346 U.S. 855, 74 S.Ct. 69, 98 L.Ed. 369 (1953).

We note also that the lawyer's role as a zealous advocate is an important one, not only for the client but for the administration of justice. We have chosen an adversary system of justice in which, in theory, the state and the defendant meet as equals —"strength against strength, resource against resource, argument against argument." *United States v. Bagley,* —— U.S. ——, —— n. 2, 105 S.Ct. 3375, 3390 n. 2, 87 L.Ed.2d 481 (1985) (Marshall, J. dissenting). In order to close the gap between theory and practice and thereby ensure that the system is working properly, a defendant must have an attorney who will fight against the powerful resources of the state. It is only when this occurs that we can be assured that the system is functioning properly and only the guilty are convicted.

■ Balanced against the attorney's obligation to his client is the attorney's obligation as an officer of the court, which requires him "[to aid] in determining truth whenever possible." Note, *Ethics, Law and Loyalty: The Attorney's Duty to Turn Over Incriminating Evidence,* 32

2. The Comment also states that "[a] lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct *or other law*" (emphasis supplied); see also ER 3.4 ("[a] lawyer shall not: (a) unlawfully * * * alter, destroy or conceal a document or other material having potential evidentiary value * * *").

The Arizona Bar Ethics Committee opinion focused on A.R.S. § 13–2809, Tampering with Physical Evidence, and § 13–2510, *et seq.,* Hindering Prosecution, and stated that these two sections created a legal obligation of disclosure. We do not agree. Both statutes require an intent to make unavailable certain evidence for prosecution. In this case, however, the attorney was not acting to impede prosecution but rather to preserve evidence. If he were acting otherwise he would not retain the evidence and then request advice as to what to do with it but would destroy it, preventing the state from being able to obtain it through normal discovery channels.

Stan.L.Rev. 977, 992 (1980). Both sides must have equal access to the relevant information. As the American Bar Association had noted: "[w]here the necessary evaluation and preparation are foreclosed by lack of information, the trial becomes a pursuit of truth and justice only by chance rather than by design, and generates a diminished respect for the criminal justice system, the judiciary and the attorney participants." II *ABA Standards for Criminal Justice,* comment to Standard 11–1.1(a) (2nd ed.1982) (footnote omitted); see also *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973) ("[t]he growth of * * * discovery devices is a salutory development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system"). Thus, in order to aid the truth determining process an attorney must refrain from impeding the flow of information to the state. The defendant's attorney can neither assist nor obstruct the prosecution in its efforts to discover evidence.

Defendant asks us, in balancing these competing interests, to hold that there is "no affirmative duty on the part of defense counsel to disclose possible inculpatory evidence obtained by counsel during the course of his representation of the client." Defendant maintains that to hold otherwise would cause irreparable harm to the attorney-client relationship.

The National Legal Aid and Defender Association in its amicus brief agrees with defendant that there should be no "absolute affirmative duty rule" requiring defendant's attorney to routinely disclose all physical evidence discovered during investigation of a case. The National Legal Aid and Defender Association suggests that we adopt the "Ethical Standard to Guide [A Lawyer] Who Receives Physical Evidence Implicating His Client in Criminal Conduct," proposed by the Criminal Justice Section's Ethics Committee. This standard reads as follows:

(a) A lawyer who receives a physical item under circumstances implicating a client in criminal conduct shall disclose the location of or shall deliver that item to law enforcement authorities only: (1) if such is required by law or court order, or (2) as provided in paragraph (d).

(b) Unless required to disclose, the lawyer shall return the item to the source from whom the lawyer receives it, as provided in paragraphs (c) and (d). In returning the item to the source, the lawyer shall advise the source of the legal consequences pertaining to possession or destruction of the item.

(c) A lawyer may receive the item for a period of time during which the lawyer: (1) intends to return it to the owner; (2) reasonably fears that return of the item to the source will result in destruction of the item; (3) reasonably fears that return of the item to the source will result in physical harm to anyone; (4) intends to test, examine, inspect or use the item in any way as part of the lawyer's representation of the client; or (5) cannot return it to the source. If the lawyer retains the item, the lawyer shall do so in a manner that does not impede the lawful ability of law enforcement to obtain the item.

(d) If the item received is contraband, or if in the lawyer's judgment the lawyer cannot retain the item in a way that does not pose an unreasonable risk of physical harm to anyone, the lawyer shall disclose the location of or shall deliver the item to law enforcement authorities.

(e) If the lawyer discloses the location of or delivers the item to law enforcement authorities under paragraphs (a) or (d), or to a third party under paragraph (c)(1), the lawyer shall do so in the way best designed to protect the client's interest.

29 Cr.L.Rep. 2465–66 (26 August 1981).

■ We agree with defendant that any requirement that the defendant's attorney turn over to the prosecutor physical evidence which may aid in the conviction of the defendant may harm the attorney-client relationship. We do not believe, however, that this reason, by itself, is sufficient to avoid disclosure. We have stated that

"[t]he duty of an attorney to a client * * * is subordinate to his responsibility for the due and proper administration of justice. In case of conflict, the former must yield to the latter." *State v. Kruchten*, 101 Ariz. 186, 191, 417 P.2d 510, 515 (1966). Thus, although we respect the relationship as an important one, we believe it must sometimes be subordinate to the free flow of information, upon which our adversary system is based. Other courts have shared our attitude. As the Kentucky Court of Appeals explained:

> It has been said that the reason underlying the attorney-client privilege is to encourage a client to disclose fully the facts and circumstances of his case to his attorney without fear that he or his attorney will be compelled to testify to the communications between them. Since the privilege results in the exclusion of evidence it runs counter to the widely held view that the fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice. In reconciling these conflicting principles the courts have pointed out that since the policy of full disclosure is the more fundamental one the privilege is not to be viewed as absolute and is to be strictly limited to the purpose for which it exists.

*Hughes v. Meade*, 453 S.W.2d 538, 540 (Ky. App.1970), citing, Annot., 16 A.L.R.3d 1047, 1050 (1967). Consistent with this philosophy, we feel that the potential damage to the adversary system is greater, and in need of greater protection, than the attorney-client relationship. We do not wish to create a situation in which counsel is made a repository for physical evidence—a serious and inevitable problem once clients become aware that evidence given to their attorneys, even by friends, may never be turned over to the state.

■ We, therefore, adopt essentially the ethical standard proposed by the Ethics Committee of the Section on Criminal Justice of the American Bar Association with regards to inculpatory evidence delivered to the attorney by a third party. Our holding is as follows: first, if the attorney reasonably believes that evidence will not be destroyed, he may return it to the source, explaining the laws on concealment and destruction. Second, if the attorney has reasonable grounds to believe that the evidence might be destroyed, or if his client consents, he may turn the physical evidence over to the prosecution. Applying this test to the instant facts, the trial court was correct in ordering the wristwatch to be turned over to the state.

## II.

### How Should the Evidence be Returned?

■ Having decided that the evidence must be turned over to the prosecution, we must determine how this can best be done without further prejudice to the defendant. The Ethics Committee's proposed standards provide that when this is done "the lawyer shall do so in [a] way best designed to protect the client's interest." *Standards, supra.*

Amicus National Legal Aid and Defender Association suggests that if the lawyer decides to disclose the item he should do so by delivering the evidence to an agent who would then deliver it to the police without disclosing the source of the item or the case involved. Defendant, however, suggests that the procedure followed in the District of Columbia be considered. According to defendant, inculpatory evidence is delivered to the District of Columbia's bar counsel for subsequent delivery to law enforcement officials. Defendant urges that this Court adopt a system whereby an attorney could anonymously deliver evidence to State Bar counsel, or presidents of local county bar associations, in a sealed package which indicates that it is being delivered due to the affirmative disclosure requirement.

We disagree with both suggestions. Not all items have evidentiary significance in and of themselves. In this case, for instance, the watch is not inculpatory per se; rather, it is the fact that the watch was found in defendant's jacket that makes the watch material evidence. By returning the watch anonymously to the police, this sig-

nificance is lost. Assuming investigating officials are even able to determine to what case the evidence belongs, they may never be able to reconstruct where it was originally discovered or under what circumstances. Cf. *People v. Meredith*, 29 Cal.3d 682, 175 Cal.Rptr. 612, 631 P.2d 46 (1981) ("to bar admission of testimony concerning the original condition and location of the evidence * * * permits the defense to 'destroy' critical information; it is as if * * * the wallet in this case bore a tag bearing the words 'located in the trash can by Scott's residence,' and the defense, by taking the wallet, destroyed this tag." *Id.* at 691, 175 Cal.Rptr. at 617, 631 P.2d at 53.

We believe it is simpler and more direct for defendant's attorney to turn the matter over to the state as long as it is understood that the prosecutor may not mention in front of the jury the fact that the evidence came from the defendant or his attorney. As the Michigan Court of Appeals explained:

> [P]ermitting the prosecutor to show that defendant's attorney had such evidence in his possession invites the jury to infer that defendant gave the evidence to her attorney. The prosecution should not be allowed to accomplish by inference what he is clearly prohibited from doing by direct proof. *People v. Nash*, 110 Mich.App. 428, 447, 313 N.W.2d 307, 314 (1981).

If a defendant is willing to enter a stipulation concerning the chain of possession, location or condition of the evidence, then the evidence may be admitted without the jury becoming aware of the source of the evidence. Cf. *People v. Meredith, supra*, at 695 n. 8, 175 Cal.Rptr. at 620 n. 8, 631 P.2d at 54 n. 8. Under these circumstances, the attorney need not be called as a witness.

### III.
### Must the Attorney Withdraw as Counsel?

■ Under these procedures, the attorney need not withdraw as counsel. If the attorneys can stipulate as to the chain of possession and no reference is made to the fact that the defendant's attorney turned the matter over to the prosecution, then there is no need for the attorney to withdraw as counsel for the defendant. There may be some cases where the client will believe that his attorney no longer has his best interest in mind. In such a case, it may be wise for the attorney to ask to withdraw. Such request should be liberally granted by the court. Where, however, the client does not object, there is no need for the attorney to withdraw from the case.

### DISPOSITION

As to the instant case, we find that defense counsel was forced to take possession of the evidence because of a reasonable fear that to do otherwise would result in its destruction. Because the source was a nonclient, and because he had reason to believe that the witness (source) would conceal or destroy the evidence, the attorney had an obligation to disclose the item and its source to the prosecution.

The order requiring disclosure is affirmed and the order requiring defendant's attorney to withdraw is reversed. The matter is remanded for further proceedings consistent with this opinion.[3]

HOLOHAN, C.J., and HAYS, J., concur.

FELDMAN, Justice, dissenting,

I dissent both because I disagree with some of the majority's conclusions and because I fear that the court's opinion leaves many unanswered questions. Ordinarily, judicial discretion requires that we avoid

---

**3.** We note that the prosecution in this matter has been suspended for over a year while this issue is being resolved. We believe that the recourse to the State Bar Ethics Committee, while proper and commendable, resulted in an excessive delay. We hope that in the future the State Bar Ethics Committee will be more prompt in responding to requests for opinions when, as here, a criminal prosecution is held in abeyance awaiting the opinion of the Committee.

questions not directly raised by the case before us. However, the opinion of the court affects vital areas of practice with which prosecutors and defense counsel must deal on a day-to-day basis. Under these circumstances I think it is important to emphasize some points only touched upon in the court's opinion and address some the court did not reach at all.

The court fails to consider the full scope of the role of defense counsel. The opinion indicates (at 76–77) that defense counsel acts both as an advocate for the defendant and an officer of the court. I believe that the role of defense counsel has an even more profound dimension. The adversary feature of the criminal justice system evolved as a control on governmental absolutism and is, therefore, a fundamental component of political liberty. Hazard, ETHICS IN THE PRACTICE OF LAW, 120–122 (1978). Viewed in this framework, the role of defense counsel goes beyond assisting in the search for truth or helping to convict the guilty and acquit the innocent. Beside these two functions, defense counsel also must maintain the integrity of our personal rights by assuring that the government meet the constitutional requirements that it both prove its case and give the defendant due process of law. These are rights which may be invoked by all defendants, not just the innocent. The constitutional guarantee of due process of law extends to all, even those whose innocence is subject to doubt and those whose guilt is certain. The system was designed to restrain governmental power and protect all citizens from tyranny. *See generally* Hamilton, Madison and Jay, THE FEDERALIST, (Scott ed. 1894) Nos. 8, 41–45, 70–78; Dworkin, TAKING RIGHTS SERIOUSLY.

In my view, therefore, defense counsel should never be put in the position of helping the government prove its case. Of course, counsel may not mislead, tamper with evidence, lie or promote such acts. To do so would violate his duty as an officer of a court which seeks to ascertain the truth. On the other hand, because defense counsel is neither an assistant to nor an investigator for the prosecutor, his function is neither to gather nor preserve inculpatory evidence for the prosecution. If he engages in such conduct, how can he then put the government to its proof? How can he be a zealous advocate for the defendant when at the same time he is likely to make himself a star witness for the prosecution?

I am led to the inevitable conclusion that defense counsel has no obligation to take possession of inculpatory evidence from third parties. Further, caution and common sense dictate that as a general rule he should never actively seek to obtain such evidence and should refuse possession even if it is offered to him. His guiding principle should be to leave things as they are found. If counsel has reasonable grounds to believe that evidence is in danger of being tampered with or destroyed by a third party, his obligations are satisfied by cautioning that person against such conduct. The majority opinion is ambiguous on this issue, but I believe that we should make it clear to the defense bar that the general rule to be followed in connection with inculpatory evidence is "hands off."

Of course, there are limited exceptions to that general rule. The defense lawyer is justified in obtaining possession of evidence where necessary to test, examine or inspect that evidence in order to determine whether it is exculpatory. Also, the lawyer may expect to use the evidence in the representation of the client. Such limited circumstances are recognized in the standard proposed by the Ethics Committee of the Criminal Justice Section of the American Bar Association and referred to in the majority opinion (at 77–78); nothing in that standard indicates that defense counsel should otherwise actively seek to obtain inculpatory evidence.

Although the court purports "essentially" to adopt the standard (at 78), I believe it misconstrues it. The standard permits defense counsel to give inculpatory evidence to the prosecution only if it is required by court order or rule, if the item received is contraband or if it poses "an

unreasonable risk of physical harm to anyone." (*See* subsec. (a) and (d)). No provision is made for delivery of inculpatory evidence to the prosecution simply because defense counsel fears that it may be destroyed if given back to its source.

In fact, the standard does cover the situation posed by this case. One of the reasons which prompted defense counsel to take the watch from Ms. Heaton was the need to examine it to determine whether it was the watch involved in the burglary. (At 74). Subsection (c) of the Standard indicates that this is a legitimate purpose for obtaining the evidence. It also indicates that when lawyers have received evidence which proves to be inculpatory it shall be returned to the source "from whom the lawyer receives it" and enjoins the lawyer to "advise the source of the legal consequences pertaining to possession or destruction of the item."

In my view, therefore, the standard clearly contemplates that the defense lawyer shall not obtain or take possession of evidence without good reason; but if he does receive it, when finished with it he must return it to its source and restore everything to the *status quo ante*. It is only if he finds that he is in possession of contraband or an item which may cause serious physical injury to others that the standard permits counsel to deliver inculpatory evidence to the prosecution. Nor does the standard contemplate that the lawyer make himself a repository for the evidence. In fact, the standard indicates that the lawyer may retain evidence only: 1) if he fears that return to the source will result in its destruction; 2) if he believes that on return it may cause serious harm to others; 3) because he intends to test, examine or use the evidence in his representation; or, 4) because he cannot return it to the source. Only under these limited circumstances may the lawyer retain the item "in a manner that does not impede the lawful ability of law enforcement to obtain the item."

Properly interpreted, therefore, the standard would instruct us as follows in the present case: if defense counsel had a legitimate reason to obtain the evidence, such as examination or testing, then it was proper to receive it from the third person who had possession. When so received, it was proper for defense counsel to retain the item while he examined it or had it tested. When he had finished with it and had discovered that he would not need it for trial, it was his duty to return it to the source with instructions as to the consequences of tampering or destruction. If he had a good faith belief that return to the source would result in damage to or destruction of the evidence, then it was his duty to retain the evidence in his possession "in a manner that [did] not impede the lawful ability of law enforcement to obtain the item."

Thus, I believe the majority is incorrect in holding that defense counsel should turn the evidence over to the prosecution. This holding has not only made defense counsel an assistant to the prosecutor's investigator but also an important witness for the prosecution. The future consequences of such a confusion of roles is bound to damage a system which, despite what we are told during periods of hysteria, has survived the test of time.

GORDON, V.C.J., joins in the dissent.