772 P.2d 1150

**The STATE of Arizona, Appellee,**

v.

**Michael Thomas HITCH, Appellant.**

**No. 2 CA–CR 87–0545–3.**

Court of Appeals of Arizona,
Division 2, Department B.

Jan. 31, 1989.

Review Denied May 23, 1989.

298

298

was unable to make a knowing and intelligent waiver of his right to remain silent. We affirm his conviction for second-degree murder.

Appellant was arrested by Tucson police officers on the evening of November 23, 1983, for assaulting his girlfriend Diane. While he was being transported to jail, appellant repeatedly told the officer that the police should not arrest him for the assault but for "something good like murder." The admissibility of that statement is not in issue. Appellant was booked and arraigned, and an attorney from the Pima County Public Defender's Office was appointed to represent him. On November 26, 1983, two detectives from the Pima County Sheriff's Department visited appellant at the jail. Appellant was advised of his *Miranda* rights, and he agreed to talk to the detectives. They questioned him about the murder of Glen Campbell whose body had been found in the early morning of November 24, 1983, in Sabino Canyon near Tucson. The officers told appellant his vehicle had also been found in the general area. Appellant then confessed to the murder.

The court denied appellant's motion to suppress the November 26, 1983, confession and ruled that it was admissible because the appointment of counsel for the assault charge "did not constitutionally require that [that] counsel be contacted" prior to interrogation and that appellant "was advised of his constitutional rights, after which he voluntarily and intelligently waived his rights by making the statement."

Appellant was not brought to trial until October 6, 1987, nearly four years after the victim's death. During the intervening period, appellant was twice committed to the state mental institution in Alhambra for proceedings pursuant to Rule 11, Ariz.R. Crim.P., 17 A.R.S. Appellant also had difficulties with counsel, and several attorneys were appointed to represent him over the years. Finally, delay was caused by the discovery of a watch among appellant's possessions that may have belonged to the victim. Because the watch was turned

298Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Mark E. Dwyer, Phoenix, for appellee.

Harriette P. Levitt, Tucson, for appellant.

## OPINION

FERNANDEZ, Judge.

We find no merit to appellant's contentions that his confession was obtained in violation of his right to counsel and that he

over to appellant's attorney's investigator, a serious question arose as to the attorney's ethical obligations concerning the disclosure of this information. The Arizona Supreme Court eventually resolved the issue. See *Hitch v. Pima County Superior Court*, 146 Ariz. 588, 708 P.2d 72 (1985).

Appellant was acquitted of first-degree murder and convicted of the lesser-included offense of dangerous nature second-degree murder. He was sentenced to an aggravated term of 21 years in prison.

On appeal, appellant contends that because of his mental condition, he could not have made a knowing, voluntary and intelligent waiver of his right to remain silent. He also contends that the court erroneously admitted his confession. We address the latter contention first.

## ALLEGED VIOLATION OF RIGHT TO COUNSEL

■ Appellant contends that his right to counsel was violated when the detectives obtained his confession to the murder while he was in custody for aggravated assault and a lawyer had been appointed to represent him. In support of his contentions, appellant cites *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Arizona v. Roberson*, 486 U.S. ——, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). Initially, we note that, pursuant to *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the holding in *Roberson* applies retroactively because this case was still on direct review and not yet final at the time *Roberson* was decided.

The difficulty with appellant's position, as the state has pointed out, is that he has confused his Fifth Amendment *Miranda* [1] rights with his Sixth Amendment right to counsel. In *Roberson*, the defendant's motion to suppress his confession was granted because the court found his *Miranda* rights had been violated. Roberson was in custody on a burglary charge. When he

was given his *Miranda* rights he told the officers he did not want to answer any questions until he saw an attorney. Three days later, a different officer interrogated him about a different burglary, and Roberson waived his *Miranda* rights and confessed. The Supreme Court held that the police violated *Edwards*, supra, when they initiated a new interrogation after Roberson had invoked his rights.

The facts in this case, however, are not like those in *Roberson*. Appellant was never read his *Miranda* rights on the aggravated assault charge. An officer began reading them to him but was unable to complete them because appellant yelled and screamed so loudly. No one ever questioned him about the aggravated assault charge, however. Counsel was appointed for him on that charge, presumably at his arraignment.[2] When the detectives came three days later to question him about the murder, they read him his *Miranda* rights, and appellant responded, "What questions do you want to ask me? Ask me, go ahead." He subsequently confessed to the murder.

In both *Roberson* and *Edwards*, the defendants asserted their right not to answer questions unless an attorney was present. In both, the police initiated new questioning despite the defendants' invocation of their rights. In this case, appellant was never questioned about the aggravated assault charge. Most importantly, appellant never asserted his right to have counsel present during questioning and agreed to talk to the officers the only time the *Miranda* rights were read to him in full.

Under the Sixth Amendment, the right to counsel attaches once adversary proceedings have commenced. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The Supreme Court ruled in that case that "a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of for-

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** This court has obtained the request for counsel form and appointment of counsel order in the aggravated assault case. We note that the request form is blank.

mal charge, preliminary hearing, indictment, information, or arraignment.' " 430 U.S. at 398, 97 S.Ct. at 1239, 51 L.Ed.2d at 436, quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972). Because appellant had not been charged with murder at the time the detectives questioned him, his Sixth Amendment right to counsel with respect to that charge had not yet attached.

In *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), the Supreme Court acknowledged the constitutional problems inherent in a situation in which a defendant is charged with one crime but is also being investigated for other crimes. Its discussion of that problem is enlightening.

> The police have an interest in the thorough investigation of crimes for which formal charges have already been filed. They also have an interest in investigating new or additional crimes. Investigations of either type of crime may require surveillance of individuals already under indictment. Moreover, law enforcement officials investigating an individual suspected of committing one crime and formally charged with having committed another crime obviously seek to discover evidence useful at a trial of either crime. In seeking evidence pertaining to pending charges, however, the Government's investigative powers are limited by the Sixth Amendment rights of the accused. To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in *Massiah [v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) ]. On the other hand, *to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.* Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, not withstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.

474 U.S. at 179–80, 106 S.Ct. at 489–90, 88 L.Ed.2d at 498–99 (emphasis added). It is important to remember in this case that appellant's confession to murder was admitted in his trial on the murder charge, not in a trial on the aggravated assault charge, the charge in which he had been appointed counsel. In *Moulton*, the defendant's statements to a government informant were held to be inadmissible in his trial on the charges for which he had retained counsel despite the state's argument that the police were also investigating other crimes through the informant. The question of whether evidence obtained with regard to other crimes would have been admissible in a trial of those other crimes was not an issue in that case.

In *Roberson*, the Supreme Court noted that in *Massiah v. United States*, supra, it had recognized that "the continuing investigation of uncharged offenses did not violate the defendant's Sixth Amendment right to the assistance of counsel." 486 U.S. at ——, 108 S.Ct. at 2100, 100 L.Ed.2d at 716. The Court then made the following distinction between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination:

> The former arises from the fact that the suspect has been formally charged with a particular crime and thus is facing a State apparatus that has been geared up to prosecute him. The latter is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether

those crimes have resulted in formal charges.

486 U.S. at ——, 108 S.Ct. at 2100, 100 L.Ed.2d at 716.

Our conclusion is also consistent with the holding in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), and *Cervi v. Kemp*, 855 F.2d 702 (11th Cir.1988). In both cases, the courts ruled that confessions had been obtained in violation of *Edwards*, supra, when police conducted post-arraignment interrogation after counsel had been appointed pursuant to the defendants' request. In both cases, however, the interrogations related to the charges on which the defendants had been arraigned, and in both, the confessions were admitted in the trials on those charges. Because appellant's Sixth Amendment right with regard to the murder charge is at issue here and because he never asserted his rights under the Fifth Amendment, we find no error in the trial court's denial of the motion to suppress his confession.

## ALLEGED INVALID WAIVER OF RIGHT TO REMAIN SILENT

 Appellant also contends that he could not have made a knowing, intelligent and voluntary waiver of his right to remain silent when the detectives came to question him on the evening of November 26, 1983, about the murder. The basis for this contention is the fact that information was available to the police on the night he was questioned that he had been intoxicated on November 23, the night he was arrested; that he was being held in the special intervention unit at the jail; and that he had a record of previous arrests and psychiatric treatment at the jail. Additionally, appellant notes that there was testimony at a Rule 11 hearing in 1984 that he has an organic brain dysfunction which affects his ability to perceive reality.

The record indicates that appellant was twice placed in the state mental institution at Alhambra between the time of his arrest and the time of his trial. At the Rule 11 hearing in December 1984, Dr. John La-Wall testified that appellant suffers from bipolar affective disorder and that he was competent to stand trial at the time he examined him. Dr. Daniel Overbeck testified that appellant suffers from schizoaffective disorder. Dr. Overbeck also referred to the report of a neuropsychological assessment conducted on appellant. The psychologist who conducted the assessment concluded that appellant suffers from a mild organic brain dysfunction most likely caused by excessive alcohol use over a prolonged period of time. The psychologist indicated in his report that the dysfunction would affect appellant's higher level cognitive functioning. The trial court determined that appellant was competent to stand trial. In its ruling, the court noted that although the psychologist had found evidence of organic brain dysfunction, "there was no indication that [appellant] could not understand and utilize concrete and basic data; further, that his language skills remained intact, as were his attention, concentration and memory functions." The court indicated that it was not convinced by Dr. Overbeck's opinions that appellant had difficulty in perceiving reality.

We find irrelevant the fact that appellant was intoxicated on the night he was arrested three days before he waived his *Miranda* rights. We also find no significance in the fact that he was in the special intervention unit at the jail at the time he was questioned. The detective testified that he was informed that appellant was under a suicide watch in the unit. There was no evidence as to why appellant was under a suicide watch.

The trial court was fully aware of appellant's mental condition, having presided at a Rule 11 hearing, having read numerous psychological reports over the years and having watched a videotape of appellant conversing with Dr. Overbeck that was introduced at the Rule 11 hearing.

Appellant has cited the case of *State v. Carrillo*, 156 Ariz. 125, 750 P.2d 883 (1988), which dealt with the ability of a mentally deficient defendant to waive his right to remain silent. Appellant attempts to distinguish *Carrillo* from his case by noting that Carrillo was not in custody at the time

he confessed, unlike appellant who had been in jail for three days when he confessed. Appellant also contends that "under an objective standard, Appellant was in a state of mind which would have made it difficult for him to make decisions of great importance in his life." Finally, appellant argues that, unlike Carrillo, he never invoked his rights so as to indicate that he understood them.

In *Carrillo*, the defendant was retarded and the question at issue was whether he could understand his rights despite his "low intelligence and poor linguistic ability." 156 Ariz. at 134, 750 P.2d at 892. Indeed, the police were aware that he was retarded and had modified his *Miranda* rights to a simplified form in order to be certain that he would understand them. In this case, appellant was found to be of average intelligence and to have a good understanding of the charges filed against him, the roles of the prosecutor, defense attorney, judge and jury, and the definition of terms such as "plea bargain agreement."

The trial court must examine the totality of the circumstances in ruling on a motion to suppress a confession. *State v. Tison*, 129 Ariz. 526, 633 P.2d 335 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). The trial court's ruling on that issue will be upheld in the absence of clear error. *State v. Hein*, 138 Ariz. 360, 674 P.2d 1358 (1983); *State v. Adams*, 145 Ariz. 566, 703 P.2d 510 (App.1985). We find no error in the trial court's finding that appellant knowingly waived his rights in light of the evidence in the record of the court's knowledge of appellant's mental problems.

AFFIRMED.

ROLL, P.J., and LACAGNINA, C.J., concur.