WEISEL ENTERPRISES, INC. d/b/a
Builder's Choice, Relator,

v.

The Honorable Peter Michael
CURRY, Respondent.

No. 04–86–00289–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 29, 1986.

Ted D. Lee, Ann Livingston, San Antonio, for relator.

R. Laurence Macon, Cox & Smith, San Antonio, Marvin A. Tenenbaum, Chicago, Ill., for respondent.

Before BUTTS, CANTU and DIAL, JJ.

## OPINION

DIAL, Justice.

Realtor brought this original mandamus proceeding following an order of the trial court denying a pre-trial motion for an in camera inspection of certain documents. Relator is the plaintiff in a suit against Builders Square, Inc., for trademark infringement and unfair competition. Following two discovery hearings, the trial court entered an order on discovery on April 22, 1986. Included in this order, and pertinent to this original proceeding, was this pronouncement of the court:

> f. In the event that Plaintiff believes that any of the documents listed as privileged on the lists of privileges documents already produced by Builder's Square should be produced, then Plaintiff may request a separate hearing with respect to any claim of privilege. This court intimates no opinion at this time on any assertions of privilege.

On May 2, 1986, relator filed a "Motion for *In Camera* Inspection of Documents Defendant Alleged to be Privileged." Relator asserted that the court was required to examine the documents *in camera* to determine whether Builders Square's claims of attorney-client privilege and the attorney-work product rule were applicable to the documents.

On May 14, 1986, Builders Square filed a response to the motion for *in camera* review. Attached to this response was a revised list of documents alleged to be privileged. Each document was generally identified as to subject matter, author and recipient.

On May 15, 1986, a hearing on relator's motion was held before respondent, the Honorable Peter Michael Curry, Judge Presiding. Relator appeared, as well as did Builders Square with the documents sought. After listening to the arguments presented by both sides, the trial court denied relator's motion.

The narrow issue presented by relator's complaint in this cause is whether the trial court's action in denying discovery, without first conducting an *in camera* inspection of the documents themselves, constitutes an abuse of discretion.

▬ The writ of mandamus may be issued when there has been a clear abuse of discretion. *State v. Sewell,* 487 S.W.2d 716 (Tex.1972). Additionally, the burden of establishing a clear abuse of discretion is upon the relator. *See Id.* at 718. In order to constitute an abuse of discretion, the action complained of must amount to fraud, or caprice or must be a purely arbitrary decision without reason. *Professional Microfilming, Inc. v. Houston,* 661 S.W.2d 767, 769 (Tex.App.—Fort Worth 1983, no writ).

Relator asserts that the trial court was required to hold the *in camera* inspection before it could act on the hearing on its motion and relies upon the decision in *Peeples v. Hon. Fourth Supreme Judicial District,* 701 S.W.2d 635 (Tex.1985) for support.

In *Peeples v. Hon. Fourth Supreme Judicial District,* 701 S.W.2d at 637 the court held:

> We hold that any party who seeks to exclude documents, records or other matters from the discovery process has the affirmative duty to specifically plead the particular privilege or immunity claimed and to request a hearing on his motion. THE TRIAL COURT SHOULD THEN DETERMINE WHETHER AN IN CAMERA INSPECTION IS NECESSARY. IF SUCH INSPECTION IS ORDERED by the trial court, those materials for which the inspection is sought must be

segregated and produced to the court. Failure to follow the above procedure constitutes a waiver of any complaint of the trial court's action.

(Emphasis added)

■ From the foregoing holding in *Peeples v. Hon. Fourth Supreme Judicial District, supra,* it is clear that the trial court does not have a mandatory duty to conduct an *in camera* inspection prior to making a ruling. Whether to conduct or not to conduct an *in camera* inspection of the documents claimed to be privileged is purely an exercise of discretion. Here the trial court had the pleadings of the parties before it including a list summarily describing each and every document sought to be discovered. While the better practice would have been to have Builders Square's response, including the list, verified or supported by affidavit. If used as evidence, the consideration of the list by the trial court in deciding whether or not to proceed to an in camera inspection was not a clear abuse of discretion. *Cf. Turbodyne Corp. v. Heard,* 698 S.W.2d 703 (Tex.App.—Houston [14th Dist.] 1985, no writ).

The application for writ of mandamus is denied.

CANTU, Justice, dissenting.

The instant cause reflects a rather protracted history of discovery evasion on the part of the real party in interest, Builders Square, Inc. The actions of the respondent trial court indicate total disinterest in preserving the integrity of the discovery statutes. The opinion of the majority does no more than thwart an already frustrated effort at achieving some semblance of compliance with discovery as spelled out by a predecessor trial court.

The Genesis of the instant proceeding is apparently found in an Order dated December 20, 1985, and signed by Judge Carol Haberman requiring Builders Square, Inc. to produce certain designated documents for discovery as well as witnesses for depositions. Following a failure by Builders Square, Inc. to comply with the order of Judge Haberman, a motion to compel was filed by Relator and heard by Judge David Peeples on March 20, 1986. At the termination of the hearing Judge Peeples assessed attorney's fees against Builders Square's attorney of record as sanctions for obstructing discovery ordered by Judge Haberman.

Thereafter, Builders Square, Inc. filed its motion to reconsider the court's prior ruling entered following the March 20th hearing. This motion was heard by Judge Peeples on April 3, 1986. The order signed on April 22 purports to once and for all dispose of all issues pending before the court touching upon discovery including the following:

(1) Plaintiff's Motion for Contempt, Second Motion to Compel Production and For Sanctions, (2) Builders Square, Inc.'s Motion For Reconsideration of Ruling of March 20, 1986, (3) Defendant's Response to Plaintiff's Request to Produce Documents, and (4) Defendant's Amended Response to Plaintiff's Request to Produce Documents.

The Order readjudicates anew the matter ruled upon by Judge Haberman and provides among other things that the sanctions assessed against Builders Square's attorney be vacated and set aside. It also provides the following:

\* \* \* \* \* \*

f. In the event that Plaintiff believes that any of the documents listed as privileged on the lists of privileged documents already produced by Builders Square should be produced, then Plaintiff may request a separate hearing with respect to any claim of privilege. This court intimates no opinion at this time on any assertions of privilege.

\* \* \* \* \* \*

Nothing in this Order prevents Builders Square, Inc. from asserting any privilege according to law.

At the hearing on April 3, 1986, the following transpired with respect to the production of documents:

THE COURT: Here is what I'm going to do on the way from one through 19, if it's your position that they've been produced Mr. Tenenbaum, by Builders Square and so forth, I'm going to require you all to file something that says the documents requested in number so and so have been produced....

\* \* \* \* \* \*

THE COURT: I'm going to rule one way or the other on K–Mart, okay. Right now I'm dealing with the question of whether documents exists [sic] and whether there is any privilege or objection to them.

MR. TENENBAUM: Right. Right.

THE COURT: Relevance also.

MR. TENENBAUM: Right. We have initially, Judge, objected on the grounds of privilege. Those objections were made, they have been preserved. We have given Mr. Lee a list of the privileged documents that we have not produced.

THE COURT: Is there anything in Items 1 through 6 that you contend is privileged?

MR. TENENBAUM: I think with respect to the—

THE COURT: On privilege—

MR. TENENBAUM: Fine. Fine, I think there is some communication with counsel.

THE COURT: On privilege you've got the burden to let the Court know what the privilege is and if the Court wants to see the documents in camera.

MR. TENENBAUM: We have, Judge, we've given him a list—

THE COURT: I would imagine that you can discuss it. But if it comes to that, that's got to be done.

MR. TENENBAUM: He's given us a list of his privileged documents and we've given him a list of ours at this point.

\* \* \* \* \* \*

THE COURT: Okay. Put that in the Order, Mr. Macon. What else? What's next? I think there probably ought to be something in there that lets any subsequent court know that this is a final and complete ruling on these requests, one through nineteen, and the objections to them.

Okay. Any objections that weren't made are waived and any privileges not asserted and so forth were not sustained except as otherwise ruled.

MR. MACON: And there is a provision, that is the provision with respect to privilege, we've already provided Mr. Lee with a list of—

MR. TENENBAUM: Privileged documents.

MR. MACON: Do you want us to bring them to the Court's attention?

THE COURT: That's true.

MR. TENENBAUM: There really isn't need for a ruling unless Mr. Lee claims that—

MR. LEE: Well there is a point on this, Your Honor, and its a point I think we need to talk about with you a little bit. If they are taking the position now that there are two separate corporations and they don't have to produce and they are not related, et cetera, then any opinions given by Mr. Haarz to Builders Square appears to now be discoverable. Then I'm entitled to any opinions, anything that may have gone from Mr. Haarz.

THE COURT: I think we are going to need a separate hearing. You find out what they've alleged as privileged that you don't think is privileged and if you need a hearing on it than do it. If you need to produce something in camera, you need to do that too, although I certainly don't look forward to in camera inspections.

MR. MACON: Under the Peeple's decision?

THE COURT: Under the *Peeple's* case, you got it.

\* \* \* \* \* \*

On May 2, 1986, relator filed a "Motion for In Camera Inspection of Documents Defendant Alleges to be Privileged."

This motion requested "an *in camera* inspection of documents defendant (Builders Square, Inc.) alleges to be privileged to determine if the documents truly are privileged." Attached to the motion was a list of documents Builders Square, Inc. contended were privileged.

Relator further alleged that the list of purported privileged documents indicated that the privilege may have been waived. For this additional reason relator asked for examination.

Builders Square then filed its "Defendant's Response to Motion for an *In Camera* Inspection of Documents Defendant Alleges to be Privileged" to which it attached its revised list of alleged privileged documents.

The response basically reasserts that all of the documents on the list are privileged under the attorney-client privilege or as the lawyer's work product. It then asserts that there is "simply no basis to require [the trial] court to go through the task of reviewing the list of privileged documents to determine the issue of privilege."

On May 15, 1986, a hearing on the motion for *in camera* inspection was held before Judge Peter Michael Curry. At the hearing, Builders Square brought the documents in question to the court room but asserted the position that no *in camera* review was necessary because the list was sufficient to show the privileges applied.

Accordingly, Builders Square relied entirely on its unverified list of documents to show that the attorney-client privilege and work product rule applied.

Even though requested to do so by Relator, Judge Curry declined to examine any of the documents in question and simply overruled the motion.[1] It is unlikely as disclosed by the record that Judge Curry

---

1. THE COURT: The thing is, I'm guessing, on the basis of many, many years of experience, that if these are letters or communications between an attorney or attorneys and clients, in all probability—I haven't seen these, and I am not ruling this way—in all probability they are privileged. I am guessing at that, because normally a lawyer is not writing to his client about hunting, or skiing, or anything of that nature. I am just saying that this is the normal thing. If I looked in the file and saw a letter from you to Builders Choice, I would almost guess that you are talking about something dealing with this case or some other case. You are not likely to be talking about what you are going to buy him for Christmas or something.

So what I am saying is there really shouldn't be a big argument about this thing. They are either privileged—it's sort of like pregnancy. You are either pregnant or you are not.

\* \* \* \* \* \*

MR. LEE: ... All right, now we have been given a list of privileged documents. In this list of privileged documents, you look at it and most of the documents—are documents of K–Mart Corporation. They are not documents of Builders Square.

Now I believe this was attached to our Motion for In Camera Inspection, if you would like to look at the list of attorney-client privileged documents.

THE COURT: I'll take your word that what you are saying is true. I mean what is shown on the instrument.

\* \* \* \* \* \*

MR. TENENBAUM: ... Now if your Honor requests that we produce documents for an in camera inspection, we'll do it. Now I think your Honor will see that these are communications relating to the name "Builders Square."

THE COURT: Well, I don't mind your going over the documents, both sides, as far as that's concerned; but I am certainly not going to do it between now and ten o'clock tomorrow morning. I don't know when I will do it.

MR. LEE: ... But if you can't review the documents between now and ten o'clock tomorrow, I understand. Review them, order produced, whatever—

THE COURT: Excuse me. I didn't want to mislead you. I wasn't implying that I was going to grant your motion. I just want to relieve you of that. I don't want you to be elated before the time. So—

MR. LEE: But if it takes more time, then it takes more time than that.

\* \* \* \* \* \*

One thing I think that you should realize in this case, Judge, assuming that you do review some of the documents, and there has been no compliance with the Peeples decision; but assume that you review the documents ... the only way that, as one summary sweep could be, and dispose of the whole thing, would be under the Peeples decision.

\* \* \* \* \* \*

THE COURT: I deny your motion, Mr. Lee.

even examined the unverified list before ruling.

The majority asserts that the single issue before us is whether Judge Curry abused his discretion in denying discovery, without first conducting an *in camera* inspection of the documents. I believe the issue is really much broader than the majority claims. The motion simply sought to test Builders Square's claim of privilege and asserted that the way to determine the documents' status required an *in camera* inspection. Thus it was not merely the inspection that was sought but the actual determination of privilege on a direct challenge to that status. Judge Curry's ruling effectively sustained the privileges asserted by refusing to require compliance by Builders Square with the requisites of *Peeples v. Honorable Fourth Supreme Judicial District,* 701 S.W.2d 635 (Tex.1985).

The majority seems to say that a privilege may be sustained through the use of an attached list summarily describing each document for which the privilege is claimed with nothing more required on the part of the party asserting the privilege. Such cannot be the law.

But even assuming that such is all that is required of a claimant, surely a privilege cannot be sustained without at least a cursory examination of the list. The instant record clearly sustains the conclusion that the trial court was too busy to comply with a minimal examination of the list. If that does not constitute an abuse of discretion then there is no such thing as abuse of discretion, for surely the exercise of an uninformed discretion can be no better than a refusal to exercise any discretion at all.

The *Peeples* opinion clearly sets out the procedure to which one *seeking to exclude* documents from discovery must adhere:

[A]ny party who seeks to exclude documents, records or other matters from the discovery process has the affirmative duty to specifically plead the particular privilege or immunity claimed and to request a hearing on his motion. The trial court should then determine whether an in camera inspection is necessary. If such inspection is ordered by the trial court, those materials for which the inspection is sought must be segregated and produced to the court. Failure to follow the above procedure constitutes a waiver of any complaint of the trial court's action.

701 S.W.2d at 637.

The trial court is given the discretion to require the party seeking exemption from discovery to comply with the aforesaid procedures before an *in camera* inspection is required.

The *Peeples* decision therefore lays out the procedure to be followed by one resisting discovery, not one seeking discovery. Clearly Relator was in no position to specify the particular immunity or privilege claimed by Builders Square, Inc. Nor would Relator be able to comply with the requirement of segregation and production. Obviously this failure to do the above would not constitute a waiver of any complaint of the trial court's refusal to *order* discovery.

The burden of proof to establish the existence of a privilege was upon the one asserting it; Builders Square in this case. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District,* 701 S.W.2d 644 (Tex.1985).

This includes the invocation of a particular privilege and the production of evidence concerning the applicability of that particular privilege. The proof required depends upon the exemption claimed and may take the form of affidavits. *Turlodyne Corp. v. Heard,* 698 S.W.2d 703 (Tex.App.—Houston [14th Dist.] 1985, no writ).

Builders Square in its response to Relator's motion generally invoked the attorney-client privilege and the attorney work product rule. No attempt was made to claim the exemptions to individual particularized documents.

TEX.R.EVID. 503(b) provides:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communica-

tions made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer, or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

The work product doctrine on the other hand, is designed to shield from discovery, the mental impressions, conclusions, opinions and legal theories of the attorney concerning the litigation. *See generally Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

In the absence of proof establishing the existence of a privilege or exemption the trial court should have denied privileged status and ordered production and discovery without resorting to an *in camera* inspection; and in this regard the majority is correct that the trial court did not abuse its discretion by refusing to inspect the documents. But as pointed out *supra,* Relator's motion sought more than a mere inspection. It sought to challenge Builders Square's claim of privilege. Additionally, the motion alleged that any privilege claimed to exist had been waived by disclosure to third persons. If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver has occurred. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District, supra.*

The trial court abuses its discretion when it grants an exemption from discovery without evidence to support the exemption. *Lindsey v. O'Neill,* 689 S.W.2d 400 (Tex. 1985).

The trial court's action in overruling Relator's motion for all purposes granted an exemption from discovery of all the documents claimed to be privileged without any evidence to support their privileged status in the record. Such action was a clear abuse of discretion for which the writ of mandamus should issue. *Giffin v. Smith,* 688 S.W.2d 112 (Tex.1985).

In the instant case Relator has been penalized for attempting to invoke the *Peeples* opinion when the burden was really upon Builders Square, as the resisting party. In my opinion the trial court had no discretion to avoid the privilege question before it. To the contrary, it had the duty as a matter of waiver by Builders Square to grant the discovery sought by Relator. *See Peeples v. Honorable Fourth Supreme Judicial District,* 701 S.W.2d at 637. Having refused to do so without the benefit of an informed exercise of discretion constitutes a clear abuse of discretion. *Cf. Zenith Radio Corp. v. Clark,* 665 S.W.2d 804 (Tex.App.—Austin 1983, no writ).

I would grant the writ of mandamus with instructions to Judge Curry to vacate his order of May 16, 1986. To refusal by the majority I dissent.