STATE ex rel. Steve
SIMMONS, Relator,

v.

The Honorable Peter S. PECA, Judge,
171st District Court, Respondent.

No. 08–90–00308–CR.

Court of Appeals of Texas,
El Paso.

Oct. 23, 1990.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for relator.

Steven L. Hughes, Jim Darnell, Grambling & Mounce, El Paso, for respondent.

Dolph Quijano, Jr., Norbert J. Garney, El Paso, other interested parties.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

### PER CURIAM.

The State seeks mandamus relief from a pretrial order by the Respondent that the State photocopy its entire investigative file (as previously opened for defense inspection) and deliver such copy to counsel representing David Leonard Wood in a capital murder prosecution pending in Respondent's docket.

In accordance with the general policy of the El Paso District Attorney's Office, counsel for Wood, the Hon. Norbert Garney and the Hon. Dolph Quijano, are given access to the entire District Attorney's file. They were permitted to read the contents and take notes. Also in accordance with that policy, the file could only be viewed by the attorney's (not paralegals or investigators), dictating the contents into a recorder was not permitted and general photocopying was not allowed. Trial has been set for January 1991. The file apparently contains six separate folders, each approximately three inches thick, dealing with the six separate murders which have been joined for capital prosecution.

Faced with the size of the file and the inconvenience attending review within the district attorney's offices, on August 8, 1990, counsel filed a discovery motion asking the Respondent to compel the Relator to permit photocopying of the entire file. Respondent conducted a hearing on the motion on August 10. During the hearing, the Respondent initially recognized that he had thus far limited his orders to the boundaries of Tex.Code Crim.Pro.Ann. art. 39.14 (Vernon 1979), and recognized that the defense request was beyond that statutory range. In the interest of furthering a speedy trial with adequate defense preparation, Respondent repeatedly urged compromise upon the part of the State and

relaxation of the existing office policy on discovery. The State acknowledged that the general policy did not preclude providing the defense with photocopies of specific, significant items upon request by the defense. That had not even been attempted in this case, the defense instead simply demanding a blanket copying of the entire file. The court continued to urge compromise but denied the Motion for Discovery. The defense had only made a cursory examination of the record. A second hearing was set for August 31, 1990. Counsel was instructed to examine the file more carefully and return to present sworn testimony describing the file contents in detail—number of pages, types of documents, etc. The court then actually withdrew its initial ruling and continued the hearing.

At the August 31 hearing, it was apparent that the defense had not engaged in the further examination previously directed by the court. Initially, counsel Quijano intended to proceed without presenting evidence as to the size, character and contents of the investigative file.

The only thing we can tell the Court, Judge, is that those papers down there are voluminous.

A warning by the judge as to the adequacy of such a record for appeal led Quijano to call cocounsel Garney for sworn testimony. He testified that, after the last hearing, he and Quijano visited the District Attorney's office and for three or four hours conducted a cursory examination of the file. His description was not significantly different from the description deemed inadequate by Respondent three weeks before. Once again, the defense described six binders, each approximately three inches thick, containing "several thousands [sic]" typewritten pages. He estimated that hand copying the contents would take "several months." Beyond a reference to "[h]undreds of pages of police supplements," no effort was made to present a definite number of pages, distinguishing them by type of document and author. The defense reviewed its request for compelled copying of the entire file. The court ordered both sides to prepare briefs. The State respond-

ed that, at that point, they were withdrawing the open file policy for Wood's attorneys and would henceforth oppose any discovery beyond the bare minimum required by case law and Article 39.14.

Another hearing was conducted on September 21, 1990. The defense offered to withdraw its discovery motion and motion to compel in exchange for a return to the prior discovery status of an open-file, limited to hand-copying. The State responded that the open-file policy was no longer available in this case. The court then ordered the State to prepare and deliver a copy of the file as previously disclosed to counsel for the defense. The court entered findings of fact and conclusions of law as follows:

(1) The State has already revealed several thousand pages of the file to the defense.

(2) Copying the material by hand would require three months.

(3) Trial is set in January 1991.

(4) The State spent approximately two years investigating the case prior to indictment.

(5) Adequate defense investigation will necessitate approximately two years.

(6) The State originally maintained an open-file discovery policy which was closed in response to defense motions.

(7) The State's change in policy is in "retribution" for aggressive actions by the defense and has a chilling effect upon the right to counsel.

(8) The court finds that if the defense needed two years to prepare for trial the defendant Wood's right to a speedy trial would be violated.

(9) Sooner trial would deprive him of effective assistance of counsel.

(10) As a matter of law, all material previously disclosed, whether work product or not, has been subjected to a waiver of the State's privilege of nondisclosure.

(11) The court has inherent power to control its docket and move cases along for trial.

■ The findings of fact and conclusions of law indicate that the Respondent based his order upon one or more of four distinct theories. A brief filed in behalf of Respondent urges several of those theories in support of the order, as well as others. We will briefly address all of the theories arguably supporting the challenged order. First, however, we must respond to the assertion that the Court lacks jurisdiction to review this order since it arises in a capital murder prosecution. On the basis of Article V, § 5 of the Texas Constitution, Respondent contends that the Court of Criminal Appeals has exclusive appellate jurisdiction over capital cases and is, therefore, the only court with mandamus jurisdiction to assess the order presently under challenge. The contention is without merit. The Court of Criminal Appeals has exclusive appellate jurisdiction not over all capital prosecution, but only over those in which the death penalty is assessed. Capital prosecution resulting in life sentences are appealed to the courts of appeal, subject to discretionary review by the Court of Criminal Appeals. This is a pretrial order; no verdict has been reached in this case which would trigger any exclusive appellate jurisdiction of the Court of Criminal Appeals. Accordingly, this Court has jurisdiction to entertain the present mandamus proceeding.

■ It has been conceded by all concerned that the scope and form of discovery sought by the defense and ordered by the Respondent are beyond the discretionary range of Tex.Code Crim.Pro.Ann. art. 39.14 (Vernon 1979). *State ex rel. Simmons v. Moore*, 774 S.W.2d 711, 714 (Tex.App.—El Paso 1989) (original proceeding in mandamus), *Brem v. State*, 571 S.W.2d 314, 321–322 (Tex.Crim.App.1978). Nor is this order supportable under constitutional discovery principles as expressed in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny. The motions for discovery filed by the defense were too broad to support a

constitutional claim, particularly in the absence of allegation and proof of any exculpatory or otherwise favorable material in the file. *Thomas v. State,* 511 S.W.2d 302 (Tex.Crim.App.1974); *Jackson v. State,* 501 S.W.2d 660 (Tex.Crim.App.1973). *See also Boles v. State,* 598 S.W.2d 274 (Tex.Crim. App.1980). This is not a case in which the defense was unable to provide greater specificity in pursuing the contested range of discovery. *See Sellers v. Estelle,* 651 F.2d 1074 (5th Cir.1981), *cert. denied,* 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472 (1982). Here, the defense had several weeks of access to the entire file. The first hearing was in fact continued for the express purpose of providing the lower court with a detailed description of the contents of the file. The defense made no such effect and did not further *refine* its discovery motion. The defense similarly did not take advantage of the State's policy of providing individual document copies upon specific requests. In any event, the record before the lower court and this Court does not reflect a *Brady* basis for the discovery order. *See generally Quinones v. State,* 592 S.W.2d 933 (Tex.Crim. App.1980), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1981).

■ There are four suggested bases for the court's order which invoke either constitutional principles or inherent judicial power:

(1) The trial judges's obligation to balance and satisfy a defendant's constitutional rights to speedy trial and effective assistance of counsel in preparing for trial;

(2) A distinct obligation to insure effective assistance of counsel by expanded discovery to compensate for physical impairment of counsel in this case (infirmity of cocounsel's writing hand and consequent limited capacity to duplicate file by hand);

(3) A duty to redress a change in discovery policy by the State which has been exercised in retaliation for aggressive (but not improper) defense efforts and which has a chilling effect on representation by counsel, jeopard-izing the defendant's rights to due process and equal protection; and

(4) The court's inherent power to control its own docket and speedily move cases along for trial.

With regard to these specific bases for the lower court's order, one can hardly fault a member of the judiciary for being concerned about due process, equal protection, the right to counsel and speedy trial. This record does reflect that, despite good intention, those exercising judicial power may err on the side of an overly-aggressive individual pursuit of those principles. The satisfaction of these principles, in large measure, flows from the participants' adherence to the criminal justice framework provided by state and federal constitution and statute. Within that framework, the judge functions primarily as a passive, neutral referee, not as an advocate-at-large. A judge who, on his own initiation, is overly aggressive in dictating the course of the post-indictment proceedings runs the risk of preempting the function of counsel for both sides and transgressing the separation of powers between the three branches of government.

In the present case, it would seem that the trial judge's actions in the interest of constitutional rights to due process, effective assistance of counsel and speedy trial are premature. On the basis of speculative anticipation of injury to these rights, the trial judge has exceeded the remedial power granted the judiciary by constitution, statute and case law. In doing so, upon these bases, the lower court has unnecessarily and improperly intruded into the discretionary area of the executive authority of the State's prosecutor and has disregarded the authority of the legislature in its statutory enactments regulating discovery. That same analysis in *Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App.1987) which led to the demise of the legislature's Speedy Trial Act, should in this case preclude reliance upon speedy trial, due process and effective assistance of counsel as bases for the challenged discovery order.

■ In particular, the Respondent's own preference for the speed of disposition of

his docket does not equate per se with the dictates of the speedy trial guarantees of the United States and Texas Constitutions. His focus upon estimated length of delay in anticipating a violation unduly focuses upon but one of the four critical factors identified in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as disposition of speedy trial complaints.

Indeed, with regard to all of these theoretical constitutional injuries, at the time Respondent entered the challenged order, not one had been embodied in a defense motion or complaint. In light of the fact that none of these could be preserved for appellate relief in the absence of trial complaint by the defense, it was inappropriate for the Respondent to have ordered such extraordinary discovery as compensatory relief for speculative future injuries raised by the court sua sponte.

■ The final rationale for entering the challenged order is that the State simply waived its work product privilege under Article 39.14 where it extended its general open-file policy to the defense at the outset of the prosecution. Initially, one seeking to limit or exclude items from discovery based upon a recognized privilege has the burden of establishing the applicability of the privilege to the particular controversy. *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 50 (Tex.App.–San Antonio 1986) (denied of mandamus relief), *writ conditionally granted,* 718 S.W.2d 56 (Tex.1986) (second original proceeding in mandamus). A privilege may be waived, however, by voluntarily disclosing or consenting to disclosure of any significant part of the otherwise privileged material. Tex.R.Crim.Evid. 511. If there has been some disclosure of the materials sought and a fact issue is raised as to waiver of privilege, the party asserting the privilege has the additional burden of disproving the waiver or establishing its limited scope. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District,* 701 S.W.2d 644, 649 (Tex. 1985). In this case, there is no question that the local prosecuting authority voluntarily disclosed significant portions of investigative material and work product

which would ordinarily be privileged under Article 39.14. Indeed, the testimony and admissions by the State reflected a long-standing policy in this regard.

■ The real conflict in this matter was not over privilege from disclosure but over the availability of photocopying or dictating the contents of the material to which the defense had already been granted full informational access. The State is implicitly arguing a two-fold privilege—one pertaining to the subject matter sought and one pertaining to the mechanics of access. Also implicit in the State's position is an assertion that a waiver of privilege as to content does not necessarily waive objection to all mechanical modes of access— look but don't touch. It is true that the various rules of discovery address not only the content of materials sought but also the methods of access and extent of physical interaction with the material to be afforded the discovering party. *See e.g. Terrell v. State,* 521 S.W.2d 618 (Tex.Crim. App.1975); *Detmering v. State,* 481 S.W.2d 863 (Tex.Crim.App.1972). The principal restriction imposed upon defense access to discovered materials is the express statutory condition that any inspection or copying be. conducted in the preserve of a State representative and no material shall be removed from the possession of the State. Tex.Code Crim.Pro.Ann. art. 39.14. *See Pabst v. State,* 721 S.W.2d 438 (Tex.App.— Houston [1st Dist.] 1986, no pet.). We do not view such restrictions as a discovery privilege or even as reflecting a resolution of any broad issues regarding disclosure of information. Rather, they reflect a concern for the preservation of the integrity and admissibility of evidence to be use at the subsequent trial.

■ With regard to photocopying discovery material, the statute does not simply refer to the scope of discovery by content and then list permissible methods and extent of physical access applicable to such discoverable material. The photocopying of the statute, from the outset, equates disclosure with the right to copying or photographing. In other words, if the material is discoverable it is also subject to photo-

copying. We see no reason, in this respect, to distinguish between matters discoverable by right and those discoverable by waiver.

We are not unmindful of the concerns expressed by the State in the court below and before this Court such as expense to the State, potential disruption of the prosecuting authority's office. These matters are not inherently trivial, but they are trivial in the context of discovery and privilege. In fact, it is not unlikely that the general open-file policy of the local prosecuting authority reflects a decision to reduce expense and disruption of office practices by avoiding in-court discovery battles. The State cannot arbitrarily curtail the natural and legal consequences of having voluntarily taken that step. In this case, that includes reproducing the voluntarily disclosed material.

 Despite the potential for a finding of privilege waiver in this case, the present order under challenge cannot stand. The State correctly asserts that the order is void due to its vagueness. An order which is so uncertain as to require an evidentiary hearing and factual findings by a judge or jury simply to determine what relief has been granted is void. *Steed v. State*, 143 Tex. 82, 183 S.W.2d 458 (1944); *Southern Pacific Transportation Co. v. Evans*, 590 S.W.2d 515, 517 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r. e.); *Hilatex, Inc. v. State*, 401 S.W.2d 269 (Tex.Civ.App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.); *Burrage v. Hunt Production Co.*, 114 S.W.2d 1228 (Tex.Civ.App.—Dallas 1938, writ dism'd).

In this case, the Respondent's order directs the State to "copy all material in his file that has been previously shown to defense counsel,...." Understandably, the Respondent could not be more precise, since he was never provided by the defense with any specific description of the contents of the district attorney's file. Respondent did direct the defense to prepare such an inventory when the first hearing was continued. That was not done and, in fact, testimony at the second hearing reflected, without specification, that the contents of the file changed. The defense may yet prevail under a theory of privilege waiver, but the Respondent's discovery and reproduction order of September 21, 1990, is void and will not support enforceable discovery or photocopying of the district attorney's file.

Accordingly, because it is the opinion of this Court that Relator's petition is well taken and should be granted, it is therefore ordered, adjudged and decreed that the Respondent vacate his order of September 21, 1990. It is anticipated that the Respondent will abide by this Court's decision; should he fail to do so, the writ of mandamus shall issue.