IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

RENE CASTRO, GUARDIAN AD LITEM FOR MINOR, C.C.
*Petitioner*,

*v.*

HON. PETER W. HOCHULI,
JUDGE PRO TEMPORE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA,
IN AND FOR THE COUNTY OF PIMA
*Respondent*,

*and*

C.C.,
*Real Party in Interest.*

No. 2 CA-SA 2014-0075
Filed February 6, 2015

Special Action Proceeding
Pima County Cause Nos. S20140052 and JD201946

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

The Hopkins Law Office, P.C., Tucson
By Cedric Martin Hopkins
*Counsel for Petitioner*

Pima County Office of Children's Counsel, Tucson
By Edith A. Croxen
*Counsel for Real Party in Interest*

---

**OPINION**

---

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Chief Judge Eckerstrom concurred.

---

E S P I N O S A, Judge:

¶1        In this case, we consider whether a child's guardian ad litem (GAL) has the authority to seek removal of the child's counsel based on the allegation that counsel has disregarded the child's legal position.  Rene Castro, GAL for C.C. in C.C.'s action to terminate the parental rights of his father Ronald C., seeks review of the respondent judge's determination that his motion to substitute C.C.'s appointed counsel was not ripe for determination.  For the following reasons, we accept jurisdiction and grant relief.

**Factual and Procedural Background**

¶2        C.C., born August 2009, was taken into temporary custody by the Department of Child Safety (DCS)[1] in June 2012 after Ronald fatally shot C.C.'s mother.  Although DCS initially filed a dependency petition, it later informed the respondent judge it did not wish to proceed with the dependency.  At that time, C.C. was

---

[1] C.C. was initially taken into custody by the Arizona Department of Economic Security (ADES).  Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for ADES's administration of child welfare and placement services under title 8 and transferred powers, duties, and purposes previously assigned to those entities to the newly established DCS.  *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.  For simplicity, our references to DCS in this decision encompass ADES.  Despite currently being C.C.'s legal custodian, *Alexander M. v. Abrams*, 235 Ariz. 104, ¶ 11, 328 P.3d 1045, 1047 (2014), DCS has taken no position in this petition for special action.

substituted as petitioner.[2]  DCS was later reinstated as petitioner, however, and in January 2013, the respondent found C.C. dependent.   In March 2014, C.C. filed a petition to terminate Ronald's parental rights.  Castro then was appointed C.C.'s GAL.

**¶3**        During an August dependency review hearing, C.C.'s counsel informed the respondent judge that C.C. had told her he wanted to live with Ronald.  She asserted, however, that she believed he had been "prepared [by someone] to give" that statement.  Castro subsequently filed a motion to substitute C.C.'s counsel, asserting she had a conflict of interest because C.C. had told several individuals, including his counsel and his therapist, that he wished to live with Ronald, but that counsel had nonetheless continued with the termination petition.  The respondent denied the motion without prejudice, determining that issue was not yet ripe for decision because no hearing on the petition for termination had been held and Castro thus could not demonstrate prejudice resulting from counsel's purported conflict of interest.  This petition for special action followed.

## Special Action Jurisdiction

**¶4**        C.C., through appointed counsel, urges us to decline jurisdiction because Castro, as his GAL, "lacks standing" to seek special action relief.  C.C. argues Castro has sought relief in his personal capacity instead of "in any representational capacity" for C.C. that he "might possess," pointing out that Castro did not list C.C. as the real party in interest on the caption of the petition for special action, named himself as the petitioner, and hired his own counsel to represent him.  The clear purpose of Castro's petition, however, is to obtain review of the respondent judge's ruling on his motion to substitute counsel.  C.C. has cited no authority suggesting

---

[2] Ronald objected and sought removal of C.C.'s former appointed counsel.  The respondent judge reassigned that attorney as C.C.'s GAL, appointing C.C. new counsel.  C.C. sought special action relief, which this court granted, determining inter alia that C.C.'s counsel was not eligible to serve as GAL.  *C.C.  v. Hochuli*, No. 2 CA-SA 2012-0069 (memorandum decision filed Dec. 7, 2012).

that minor defects in form require us to decline jurisdiction or deny relief. And we will not elevate form over substance to avoid the issues presented here. *Cf. Muchesko v. Muchesko*, 191 Ariz. 265, 274, 955 P.2d 21, 30 (App. 1997) (treating improper appeal as special action and accepting jurisdiction to address merits of argument). Accordingly, we also reject C.C.'s related argument that we should decline jurisdiction because Castro "has suffered no injury."

**¶5**　　　　C.C. further claims, however, that we should decline jurisdiction because Castro lacks the authority to seek his counsel's removal under Rule 40, Ariz. R. P. Juv. Ct. He cites *Cecilia A. v. Arizona Department of Economic Security*, 229 Ariz. 286, 274 P.3d 1220 (App. 2012), for the proposition that a GAL "is not authorized to make decisions on behalf of" the ward "absent a court finding of incompetency." That case, however, is distinguishable. There, we determined a GAL could not file a notice of appeal on behalf of an adult ward without a finding by the trial court, pursuant to Rule 40(C), that there were "meritorious reason[s]" to allow the GAL to act in the best interests of the parent. *Id.* ¶¶ 9-10. But a GAL is "a person appointed by the court to protect the interest of a minor *or* an incompetent." A.R.S. § 8-531(7) (emphasis added). Based on the plain language of that definition, no competency finding is required before a GAL may act to protect the child's interest. *See In re Jessi W.*, 214 Ariz. 334, ¶ 15, 152 P.3d 1217, 1220 (App. 2007) (plain language of statute "best indication of its meaning").

**¶6**　　　　And the nature of the GAL's role when appointed for an adult is notably different from when, as here, a GAL is appointed for a child. Pursuant to Rule 40(C), a GAL appointed as an adult "parent, guardian, or Indian custodian" must "conduct an investigation and report to the court as to whether the [person] may be incompetent and in need of protection." Only then can the GAL act on the adult's behalf. *Cecilia A.*, 229 Ariz. 286, ¶¶ 9-10, 274 P.3d at 1223. A GAL appointed for a child, in contrast, is immediately empowered to "protect the interest[s] of the child." Ariz. R. P. Juv. Ct. 40(A). That authority necessarily includes the authority to seek the replacement of the child's counsel if such action is in the child's best interests. And a GAL is authorized to file pleadings when appropriate. Ariz. R. P. Juv. Ct. 40.1(C). Thus, for the reasons

stated, and because Castro has no "equally plain, speedy, and adequate remedy by appeal,"[3] we accept special action jurisdiction. Ariz. R. P. Spec. Actions 1.

## Motion to Substitute Counsel

¶7       We first consider that in his special action petition, Castro asserts that C.C.'s counsel "has proceeded and is continuing to proceed in excess of legal authority and has failed to perform a duty required by law."  This argument recites the standard for obtaining special action relief pursuant to Rule 3(b), Ariz. R. P. Spec. Actions.  But Castro's petition, appropriately, names as respondent the judge who denied his request to substitute counsel, not C.C.'s counsel, and under Rule 3, the only questions that may be raised here relate to the respondent's performance of his duties.  *See* Ariz. R. P. Spec. Actions 3; *see also* Ariz. R. P. Spec. Actions 2(a) bar committee note (special action must be directed to court and individual judge or board being reviewed).  Despite his misdirected argument, we nonetheless address the issues raised by Castro's petition for special action because matters of form, in appropriate circumstances, may be overlooked if it is in C.C.'s best interests that we do so.  *See Nold v. Nold*, 232 Ariz. 270, ¶ 10, 304 P.3d 1093, 1096 (App. 2013) ("[I]f the best interests of the child trump the consequences ordinarily imposed for violations of the rules, then they should not be ignored under the discretionary doctrine of waiver.").

¶8       We disagree with the respondent judge that the essential issue presented in Castro's motion—that C.C.'s counsel was violating her duty to C.C. by proceeding with the litigation— was not ripe for consideration.[4]  That issue can—and should—be

---

[3]Although C.C. contends Castro has a remedy by appeal, this argument is difficult to reconcile with C.C.'s position that his GAL is not empowered to take action on his behalf.  In any event, a remedy by appeal is not adequate because it would be available only after subjecting C.C. to a termination proceeding.

[4]We note that Castro couched the issue below in terms of ineffective assistance of counsel and case law addressing post-

addressed before the litigation proceeds further because, if Castro were correct and counsel is removed,[5] the petition to terminate parental rights might be withdrawn. *See* Ariz. R. P. Spec. Actions 3(a) (special action relief appropriate if respondent "has failed to exercise discretion which he has a duty to exercise"). The best interests of the child are a juvenile court's "primary consideration in dependency cases." *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, ¶ 8, 187 P.3d 1115, 1117 (App. 2008); *cf. Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 210, 841 P.2d 198, 205 (1992) (accepting special action jurisdiction in part because relief would end litigation and "spare[] the parties and the judicial system unnecessary time and expense"). And, when a child is appointed counsel during termination proceedings, that child is entitled to be represented by counsel that will advocate for his subjective goals in the litigation. *See In re Yavapai Cnty. Juv. Action No. J-8545*, 140 Ariz. 10, 16, 680 P.2d 146, 152 (1984); ER 1.2(a), Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42. Furthermore, it would not promote C.C.'s best interests to

---

conviction relief in the context of criminal proceedings. This approach was both unnecessary and unhelpful to the respondent judge, and, indeed, Castro has now abandoned it and faults the respondent for the analysis he urged below. We nevertheless reach the merits of the claim because the factual basis and remedy sought were sufficiently articulated and the best interests of the child are a paramount concern.

[5]C.C. implies he alone has the authority to seek removal of appointed counsel. But Castro has been appointed as GAL to protect C.C.'s best interests, which obviously are implicated if counsel, as alleged by Castro, was acting in contravention of C.C.'s expressed wishes by continuing to pursue the termination petition. Otherwise, the child would have to independently seek counsel's removal despite having a GAL assigned to protect his best interests, but no reasoned basis in law or policy has been identified to adopt such a position.

require him to litigate a termination petition that he does not want to prosecute.[6]

¶9        C.C. argues that his statements that he wishes to live with Ronald "cannot establish counsel has disregarded the minor's legal position."  We agree that such statements are not necessarily inconsistent with the pursuit of a petition to terminate parental rights—C.C. may, for example, wish to live with Ronald but conclude it is not in his best interests that he do so.  C.C.'s statements, however, are facially inconsistent with termination, and further investigation is necessary to properly resolve the issue.  It is therefore entirely appropriate for the respondent judge to explore whether that inconsistency can be reconciled with C.C.'s reported decision to seek termination of Ronald's parental rights.[7]

¶10        And there is no question that, if C.C.'s counsel has acted in contravention of C.C.'s wishes, she would be subject to removal. A child's counsel has a duty to represent the child in light of the child's decisions about the objectives of the litigation.[8]  *See* ER 1.2(a),

---

[6]If the respondent judge were to conclude that termination is in C.C.'s best interest, he has the option of ordering DCS, C.C., or Castro to file a motion to terminate Ronald's parental rights.  *See* A.R.S. § 8-862(D); Ariz. R. P. Juv. Ct. 64(A).

[7]We need not, and do not, determine the minimum showing a GAL must make for a prima facie case that child's counsel should be removed.  We conclude only that the showing made here is sufficient to require determination by the respondent judge whether good cause exists to remove counsel.  *Cf. State v. Torres*, 208 Ariz. 340, ¶ 6, 93 P.3d 1056, 1058 (2004) (criminal defendant entitled to new counsel if "there is a complete breakdown in communication or an irreconcilable conflict between a defendant and his appointed counsel."); *State v. Schaaf*, 169 Ariz. 323, 330, 819 P.2d 909, 916 (1991) (attorney permitted to withdraw upon showing of good cause).

[8] Counsel may, of course, advise the child to follow a particular course of action.  And we do not suggest counsel cannot attempt to reconcile and resolve with the child changes in his or her expressed goals.

Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42 ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued."); *cf.* ER 1.14(a) (lawyer "shall, as far as reasonably possible, maintain a normal client-lawyer relationship with . . . client" having diminished capacity); American Bar Association Standards of Practice for Lawyers who Represent Children in Abuse and Neglect Cases § A-1 (1996) ("*ABA Standards*") (child's attorney "provides legal services for a child and . . . owes the same duties . . . to the child as is due an adult client").[9] An attorney appointed to represent a child in a dependency proceeding has an obligation to seek appointment of a guardian ad litem if the child cannot express a preference or if that expressed preference would injure the child. *See* ER 1.14(b); *ABA Standards* § B-4(1), (3).[10]

**¶11**　　　　In contrast, a guardian ad litem may make decisions in the child's best interests irrespective of the child's expressed wishes. *See* Ariz. R. P. Juv. Ct. 40(A) (guardian ad litem appointed "to protect the interests of the child"); *ABA Standards* § A-2 (guardian ad litem "is an officer of the court appointed to protect the child's

---

[9]The comment to Rule 40.1, Ariz. R. Juv. Ct., notes the Arizona Supreme Court relied on the *ABA Standards* and other national standards "[i]n developing the Standards on which this rule is based" and further directs "attorneys and guardians ad litem [to] be familiar with and consult these national standards and references." We therefore consider those standards instructive in determining the role of counsel and guardians ad litem in dependency actions and in our interpretation of the rules applicable in this case. *Cf. Aksamit v. Krahn*, 224 Ariz. 68, ¶ 14, 227 P.3d 475, 478-79 (App. 2010) (relying on *ABA Standards* in interpretation of family law rules).

[10]We recognize the difficulties that may be encountered in communicating with a four-year-old client about critical litigation decisions with potentially lifelong consequences, and that a child's expressions regarding those choices may be fluid at times. We also note that, based on the record before us, it appears C.C.'s counsel has in good faith attempted to represent her client in conformance with her interpretation of governing ethical rules.

interests without being bound by the child's expressed preferences").

**¶12**        C.C. also expresses concern that investigation into the reasons for prosecuting the petition for termination will infringe on his right to confidential communications with his counsel. This argument presumes that, in order to demonstrate counsel has acted in conformance with C.C.'s wishes, counsel will be required to explain why C.C. has decided to pursue termination of Ronald's parental rights. But we are not convinced the attorney-client privilege would necessarily encompass the motive for pursuing the petition, nor have we been provided any reason C.C. could not inform the respondent judge of that motive *in camera* if necessary. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); *State ex rel. Hyder v. Superior Court*, 128 Ariz. 253, 255, 625 P.2d 316, 318 (1981) (attorney not required to produce subpoenaed document only if "the document was transferred to the attorney to further his legal advice and if the client himself would be privileged from producing the document"); *cf. State ex rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336, 548 P.2d 426, 429 (1976) (trial court may conduct *in camera* review of privileged materials).

## Disposition

**¶13**        For all of the foregoing reasons, we accept jurisdiction and grant relief. The respondent judge is directed to investigate the allegation that counsel is acting in contravention of C.C.'s wishes by pursuing the petition to terminate Ronald's parental rights, and to determine whether C.C.'s counsel should therefore be removed and new counsel substituted.