NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

E.O., *Appellant*,

*v.*

MICHAEL M., KATIE A., *Appellees*.

No. 1 CA-JV 14-0310
FILED 8-6-2015

Appeal from the Superior Court in Maricopa County
No. JS 517064
The Honorable Janice K. Crawford, Judge

**VACATED AND REMANDED**

COUNSEL

Terrea L. Arnwine, P.L.L.C.
By Terrea L. Arnwine
*Guardian ad litem for child*

Katie A.,
*Appellee Mother*

Gates Law Firm, L.L.C., Phoenix
By S. Marie Gates
*Counsel for Appellee Father*

_____

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Lawrence F. Winthrop joined.

_____

**D O W N I E**, Judge:

**¶1**        Terrea L. Arnwine, Guardian *ad Litem* ("GAL") for minor child E.O. ("the Child"), appeals the juvenile court's order denying a petition to sever the parental rights of Michael M. ("Father"). For the following reasons, we vacate that order and remand for reconsideration of the Child's best interests.

## FACTS AND PROCEDURAL HISTORY

**¶2**        The Child was born in August 2007 to Father and Katie A. ("Mother"), who were unmarried but cohabiting at the time. Thereafter, Mother and the Child moved in with the maternal grandparents, and Father resided with the Child's paternal grandmother.

**¶3**        During the Child's early years, Mother and Father maintained a sporadic romantic relationship marked by ongoing conflict that led to injunctions against harassment, orders of protection, and domestic violence charges.

**¶4**        In December 2007, Father was incarcerated for three months on charges including theft of means of transportation and fraud. Mother subsequently petitioned for and received sole custody of the Child in family court proceedings; Father was awarded weekly supervised parenting time. After his release from jail, Father had regular visitation with the Child, supervised by the paternal grandmother and paternal great grandparents.

**¶5**        In 2010, Father was incarcerated for a burglary conviction. Mother and Father initially stayed in touch through phone calls and letters, and Father attempted to maintain a relationship with the Child by sending her drawings. In September 2012, Mother ended her relationship with Father after meeting A.A. ("Stepfather"). Mother and Stepfather married in April 2013. The Child continued to regularly visit Father's

family, and Father sent the Child correspondence and gifts. Mother stopped permitting visits with Father's family in February 2014.

¶6        Mother filed a severance petition in August 2013, seeking to terminate Father's parental rights on the basis that he was incarcerated on a felony conviction for a length of time that would deprive the Child of a normal home for a period of years. The juvenile court appointed Arnwine as GAL for the Child. Mother later filed an amended petition that alleged abandonment and "incapacity" as additional grounds for severance.

¶7        After a two-day severance trial, the court ruled that although Father had abandoned the Child, severance was not in her best interests. The GAL timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶8        As a threshold matter, Father suggests that the GAL's notice of appeal is defective because "there is no avowal that counsel communicated with the child or was unable to communicate due to the child's age." Father cites no authority for his contention, though we presume he is relying on Arizona Rule of Procedure for the Juvenile Court 104(B), which states:

> When the appellant is represented by counsel, the notice of appeal or cross-appeal shall contain the following statement: "By signing and filing this notice of appeal, undersigned counsel avows that [he/she] communicated with the client after entry of the judgment being appealed, discussed the merits of the appeal and obtained authorization from the client to file this notice of appeal."

¶9        The GAL, though, is not appearing as the Child's counsel. She is "an officer of the court appointed to protect the child's interests without being bound by the child's expressed preferences."[1] American

---

[1]    The GAL erroneously refers to herself in the opening brief as "Attorney for the Child." She was appointed solely as GAL. The juvenile court expressly declined to appoint counsel for the Child. Father does not argue the GAL lacks standing to raise the arguments set forth in the opening brief. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491 n.2,

Bar Association, *Standards of Practice for Lawyers who Represent Children in Abuse and Neglect Cases* § A-2 (1996); *see also Castro v. Hochuli*, 236 Ariz. 587, 591-92, ¶ 11, 343 P.3d 457, 461-62 (App. 2015). We have previously held that, "just as Rule 104(B) is not triggered when a party files a notice on his or her own behalf, Rule 104(B) is not triggered by a GAL's filing." *Cecilia A. v. Ariz. Dep't of Econ. Sec.*, 229 Ariz. 286, 288, ¶ 7, 274 P.3d 1220, 1222 (App. 2012).

**¶10**        To justify severance of parental rights, the juvenile court must find at least one statutory ground enumerated in A.R.S. § 8-533(B) by clear and convincing evidence. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find by a preponderance of the evidence that severance is in the child's best interests. *See Kent K. v. Bobby M.,* 210 Ariz. 279, 288, ¶ 41, 110 P.3d 1013, 1022 (2005).

**¶11**        The court here ruled that Father had abandoned the Child — a determination that has not been challenged on appeal. Despite this finding, the court concluded that terminating Father's parental rights was not in the Child's best interests. It is this determination that the GAL challenges — arguing that the court improperly focused on a concern that severing Father's rights would jeopardize the Child's relationship with her paternal grandmother and paternal great grandparents.

**¶12**        At the outset of its best interests analysis, the juvenile court cited several factors that clearly weigh in favor of severance. It noted, for example, that Stepfather wishes to adopt the Child and that he "has taken on the role of being a father to [her]." The court further found that Mother and Stepfather "provide the Child with a safe, stable and happy home" and "provide for all of [her] needs." *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998) (factors that weigh in favor of severance include the availability of an adoptive placement and a placement that is meeting the child's needs). The court then discussed the Child's relationship with her paternal relatives, stating:

> The Child has a close bonded relationship with Paternal Great Grandparents and Paternal Grandmother. Before Father's incarceration, Paternal Great Grandparents supervised Father's parenting time and had the Child every

---

¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (issue not developed by party on appeal deemed waived).

weekend even when Father was not present for his parenting time. After Father's incarceration in 2010, Mother allowed Paternal Great Grandparents to have the Child at their home on most weekends. Paternal Great Grandfather picked the Child up from school when asked by Mother. The Child has her own room at Paternal Great Grandparents' home.

. . . .

Although an adoption by Mother's husband may serve the Child's best interest, severing Father's parental rights will likely result in the Child losing her relationship with Paternal Great Grandparents. The Court finds that it is not in the Child's best interest to lose her relationship with Paternal Great Grandparents. Accordingly,

Mother's Amended Petition for Termination of Parent-Child Relationship . . . is denied.

¶13      We infer that the juvenile court understood that, under the law, severance likely would end any relationship between the Child and her paternal relatives. As the GAL observes, however, under A.R.S. § 25-409(C), grandparents and great grandparents may petition for visitation with a child born out of wedlock. If they were to file a petition for visitation while Father remains the Child's legal parent, a subsequent severance and adoption by Stepfather would not extinguish any visitation rights awarded to them. *See* A.R.S. § 25-409(H) (automatic termination of visitation rights does not apply "if the child is adopted by the spouse of a natural parent after the natural parent remarries"). At the time of the severance trial, however, the paternal relatives had taken no legal steps to establish such rights.

¶14      Aside from its concern that the Child might lose her relationship with the paternal relatives if Father's rights were severed, the juvenile court cited nothing that supports a refusal to terminate on best interests grounds. Because it appears that the court placed almost singular reliance on that circumstance, without considering the paternal relatives' ability to seek and obtain visitation in the family court, we vacate the order denying Mother's severance petition and remand for reconsideration of the Child's best interests. The paternal relatives' failure to seek a visitation order should not serve as a bar to stability and permanence for the Child through adoption.

**CONCLUSION**

¶15 For the foregoing reasons, we vacate the order denying Mother's severance petition. We remand to the juvenile court for further proceedings relating to the Child's best interests.



**Ruth A. Willingham** · Clerk of the Court
FILED: RT